# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANNETTE R. TAYLOR,<br><br>　　　　*Plaintiff*,<br><br>　　v.<br><br>DEB HAALAND, in her official capacity as Secretary of the Interior,[1]<br><br>　　　　*Defendant*. | No. 20-cv-3173 (DLF) |

## MEMORANDUM OPINION AND ORDER

Annette R. Taylor brings this action against Deb Haaland, the Secretary of the Interior, pursuant to Title VII of the Civil Rights Act, the Rehabilitation Act, and the Age Discrimination in Employment Act (ADEA). Taylor alleges that the Department of the Interior discriminated against her based on her race, color, disability and age, created a hostile work environment, and failed to accommodate her disability. Before the Court is the Secretary's Partial Motion to Dismiss, Dkt. 14. For the following reasons, this Court will grant that motion.

## I.    BACKGROUND

Taylor, an African American woman over the age of forty, worked as a secretary for the Department of the Interior. *See* Compl. ¶ 9, Dkt. 1. During the events relevant to this litigation, she suffered from both osteoarthritis and chronic kidney disease. *See id.* ¶¶ 18–19. These illnesses required her to use a cane when walking in the office. *See id.* ¶ 14. They also caused fatigue and trouble with her memory, which worsened as her kidney disease progressed. *See id.*

---

[1] When this complaint was filed, David L. Bernhardt was the Secretary of the Interior. When Deb Haaland became Secretary, she was substituted pursuant to Fed. R. Civ. P. 25(d).

¶¶ 20–22; *see also id.* ¶¶ 24, 108 (noting that Taylor was diagnosed with stage IV chronic kidney failure in August 2019).  This change in her symptoms caused Taylor to visit her doctor more frequently, which in turn caused her to miss work more often.  *See id.* ¶¶ 23, 25.  When she missed work, she notified her supervisor Martha Eichenbaum through either a phone call or an email.  *See id.* ¶¶ 11, 22.

Taylor alleges that the discrimination against her began in 2018.  *See id.* ¶¶ 10, 57.  She alleges that Eichenbaum assigned her "Property Management" duties, which required carrying heavy items around the office.  *Id.* ¶¶ 13, 49–52, 57.  She also alleged that the Department monitored her more closely than her coworkers.  *See id.* ¶¶ 59–61, 67, 72–73, 77.  Specifically, she alleges that Eichenbaum: (1) requested that she fill out a form to request leave when she would miss work, *see id.* ¶ 58; (2) tracked her arrival and departure times, *see id.* ¶¶ 59–60; (3) limited her lunch break to 12:00 pm–1:00 pm, *see id.* ¶¶ 72–73; and (4) investigated her employment record, *see id.* ¶ 76.  Taylor claims that no other employee had their movements monitored and regulated in the same manner.  *See id.*  ¶¶ 59, 61, 72–73, 76.

In addition to this monitoring, Taylor states that she faced "harassment and hostility" from her coworkers.  *Id.* ¶ 63.  Her coworkers referred to her as "old, useless," and wondered why the Department kept her employed.  *Id.* ¶¶ 63–65.  She also recounted a Christmas luncheon to celebrate the birthdays of employees born in December, a category that includes Taylor.  *See id.* ¶ 68.  When Taylor inquired why her name was not announced with the other employees with December birthdays or included on the cake, Eichenbaum replied that "it didn't matter."  *Id.* ¶¶ 68–71.  Taylor represents that the incident caused her to feel "excluded, ostracized, . . . isolated and dejected."  *Id.*  ¶ 70.

On October 29, 2018, Eichenbaum issued Taylor a notice of a proposed five-day suspension without pay for not formally requesting leave when she missed work. *See id.* ¶¶ 25, 28, 31. When Taylor objected to proposed suspension, Eichenbaum and her direct supervisor, Karen Matragrano, offered to drop all complaints against Taylor if she agreed to retire. *See id.* ¶¶ 31–32. After Taylor declined the settlement, the Department increased the length of the proposed suspension to fourteen days. *See id.* ¶ 35. To support that increase, the Department alleged that Taylor provided inaccurate time and attendance information in the Department's "Quick Time" system. *Id.* ¶ 38.

Taylor challenged the proposed suspension and filed an EEO discrimination complaint against the Department. *See id.* ¶ 39. During mediation, she explained to Department personnel, including Eichenbaum and Matragrano, that her absences were related to her kidney disease. *See id.* ¶ 43. She also asked the Department to "find some other employee to do her job, until she gets well and be able to return to work and do her job after treating her kidney disease." *Id.* ¶ 44. Eichenbaum responded by telling Taylor that "other employees are very busy with their jobs[;] you should come and do yours or retire." *Id.* Matragrano subsequently issued Taylor a twelve-day suspension without pay, *see id.* ¶ 46, and Taylor responded by filing a charge with the Department's EEO, *see* Compl. ¶ 1.

Taylor filed this civil action on November 2, 2020. Dkt. 1. Her complaint alleges that the Department discriminated against her on the basis of race, color, disability, and age (Counts I, III, and VI), created a hostile work environment based on the same protected characteristics (Counts II, V, and VII), and failed to accommodate her disability (Count IV). *See id.* ¶¶ 98–133. As relevant here, Taylor alleges that the Department discriminated against her by suspending her for twelve days, monitoring her work hours, prescribing her lunch time, and allowing her

coworkers to make offensive remarks about her. *See* Compl. ¶¶ 102–04, 114–15, 126–28. She also alleges that this same conduct created a hostile work environment. *Id.* ¶¶ 107–09, 121–23, 131–33. The Department now moves to dismiss the above claims, except for the claim that the Department's suspension was discriminatory, for failure to state a claim upon which relief can be granted. *See* Def.'s Mot. to Dismiss, Dkt. 14. That motion is now ripe for review.

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint need not contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678

(quotation marks omitted).  An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

### III.  ANALYSIS

The Court will dismiss several of Taylor's discrimination claims for failure to identify adverse employment actions.  The Court will also dismiss Taylor's hostile work environment claims for the failure to allege sufficiently severe or pervasive conduct.  Finally, the Court will dismiss Taylor's accommodation claim for lack of exhaustion.  On account of those holdings, the only claims remaining in this case will be Taylor's challenges to her suspension.

#### A.  Discrimination

Title VII of the Civil Rights Act requires that employment decisions by the federal government be "made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16(a).  "Under Title VII, the ADEA, and the Rehabilitation Act, the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, . . . age, or disability."  *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).  In an employment discrimination claim, "an employee suffers an adverse employment action if [she] experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm."  *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002).  An adverse employment action entails "a significant change in employment status, such as hiring, firing,

5

failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

As relevant here, Taylor alleges that the Department discriminated against her by monitoring her work hours, prescribing her lunch hour, permitting her coworkers to disparage her, and "singling out and targeting" her. *See* Compl. ¶¶ 102–04, 114–15, 126–28.[2] Those actions, however, do not rise to the level of adverse employment actions. None of them are comparable to firing, reassigning, or failing to promote. *See Taylor*, 350 F.3d at 1293 (D.C. Cir. 2003). Nor did they effect a substantial change in Taylor's responsibilities or benefits. While Taylor may have been frustrated by the Department monitoring her work hours and limiting her lunch time, that frustration does not form the basis of an adverse employment action. In *Jones v. Bush*, 160 F. Supp. 3d 325 (D.D.C. 2016), the Court did not consider a one-hour change in an employee's work schedule to be an adverse employment action. *See id.* at 347. Similarly here, although requiring Taylor to work a fixed schedule "caused her some inconvenience," *id.*, the action falls outside Title VII's scope. Furthermore, although Taylor's coworkers' comments were rude and disrespectful, this Court has consistently held that such comments fail to constitute an adverse employment action. *See, e.g.*, *Baird v. Gotbaum*, 662 F.3d 1246, 1249 (D.C. Cir. 2011) (noting that "public humiliation or loss of reputation" does not constitute an adverse employment action); *Jones*, 160 F. Supp. 3d. at 346 (concurring that "acts of disrespect or rudeness are nothing like the ultimate employment decisions typically deemed adverse"

---

[2] In one paragraph of her complaint, Taylor alleges that the Department "denied her employment benefits that others were getting." Compl. ¶ 114Because Taylor never identifies those benefits, the Court interprets the phrase in the context of her broader complaint to describe the benefits of flexibility in her arrival, departure, and lunch times, as well as the benefit of requesting sick leave informally.

(citation omitted)).  The Court thus will dismiss the above discrimination claims for the failure to allege an adverse employment action.

In contrast, Taylor's challenges to her suspension survive the Department's motion to dismiss.  The Department does not seek dismissal of Taylor's claim that her suspension was racially discriminatory, as alleged in Count I of her complaint, *see* Compl. ¶ 105.  *See* Gov't's Mot. to Dismiss at 1.  And although it is unclear whether the Department seeks dismissal of her claims that the suspension involved discrimination based on disability or age, as alleged in Counts III and VI of her complaint, *see* Compl. ¶¶ 113, 129, *see id.*, any argument to that effect would fail.  Suspension without pay is an adverse employment action, *see Weng v. Solis*, 960 F. Supp. 2d 239, 248–49 (D.D.C. 2013), and the Department has not sought dismissal Taylor's discrimination claims on any other ground.  Taylor's challenges to her suspension will accordingly proceed to discovery.

### B.     Hostile Work Environment

Taylor further alleges that the Department created a hostile work environment.  *See* Compl. ¶¶ 107–09, 121–23, 131–33.  To prevail on that claim, Taylor must show that Department officials "subjected [her] to 'discriminatory intimidation, ridicule, and insult' that [was] 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'"  *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  Because Title VII is not a "general civility code," the officials' conduct "must be [so] extreme [as] to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks omitted).  In assessing whether a hostile work environment exists, "courts consider the totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is

7

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Richardson*, 160 F. Supp. 3d 88, 126 (D.D.C. 2015) (citing *Harris*, 510 U.S, at 23); *see also Aldrich v. Burwell*, 197 F. Supp. 3d 124 (D.D.C. 2016) (using the same standard to analyze hostile work environment claims under the ADEA and Rehabilitation Act). A plaintiff must also "establish that the allegedly harassing conduct . . . was based on a protected characteristic," or that there is "some linkage between the hostile behavior and [her] membership in a protected class." *Byrd v. Vilsack*, 931 F. Supp. 2d 27, 45 (D.D.C. 2013) (Wilkins, J.) (citation omitted).

Here, Taylor argues that the Department created a hostile work environment by: (1) monitoring her arrival and departure time and using her coworkers to assist with this monitoring; (2) allowing her coworkers to taunt her; (3) limiting her lunch time to a specific hour; (4) proposing a five-day suspension without pay and later expanding the suspension to fourteen days; (5) offering her an "unconscionable" settlement agreement, which Taylor characterized as an "ultimatum to take or leave it"; (6) suspending her for twelve days; and (7) investigating her employment history. *See* Compl. ¶¶ 108, 122, 132. This conduct is not "sufficiently severe or pervasive to alter the conditions of [her] employment and create a hostile work environment." *See Baloch*, 550 F.3d at 1201 (quoting *Harris*, 510 U.S. at 21).

To begin, many of the above actions are insufficiently "severe" to establish a hostile work environment. *Id.* Although the offensive comments from Taylor's coworkers were likely unpleasant, "mere offensive utterance[s]" do not create a hostile work environment. *Pauling v. District of Columbia*, 286 F. Supp. 3d 179, 210 (D.D.C. 2017) (alteration in original) (quoting *Faragher*, 524 U.S. at 787–88); *see also Nurridden v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) ("Plaintiff's allegations of disparaging remarks, criticisms of his work, and other negative

8

comments do not sufficiently demonstrate a significant level of offensiveness."). Nor does the Department's monitoring of Taylor's work hours and prescribing her lunch time. The "selective enforcement of a time and attendance policy does not necessarily indicate conduct giving rise to a hostile work environment claim." *Brooks v. Grundmann*, 748 F. 3d 1273, 1276 (D.C. Cir. 2014); *see also Coady v. Chao*, 2019 WL 4706908, at * 6 (D.D.C. Sept 26, 2019) ("[S]elective imposition of sick leave restrictions, among other things, is insufficient to create a hostile work environment."). The same is true for the "heightened scrutiny of [Taylor's] work [and] interference with [that] work by [] management personnel." *Tumblin v. Barr*, 2020 WL 7078826, at *5 (D.D.C. Dec. 3, 2020). That scrutiny does not support finding a hostile work environment where, as here, it involved "issues with [a plaintiff's] work product, [was] not physically threatening, and ultimately consisted of the kinds of 'ordinary tribulations of the workplace' that fall outside the ambit of Title VII." *Id.* at *6. (quoting *Faragher*, 524 U.S. at 787).

Taylor's remaining allegations, which concern the proposed settlement agreement and her twelve-day suspension, do not transform the above conduct into a hostile work environment claim. Although Taylor's challenge to her suspension states a claim for discrimination, "the fact that the group [of allegations] includes one of the alleged discrete acts of discrimination . . . does not perforce establish a hostile environment." *Aldrich*, 197 F. Supp. 3d at 138; *see also Nurriddin*, 674 F. Supp. 2d at 94 ("[M]ere reference to alleged disparate acts of discrimination . . . cannot be transformed, without more, into a hostile work environment."). This Court has previously held that a three-day suspension and "various performance-based allegations" did not create a hostile work environment. *Jimenez v. McAleenan*, 395 F. Supp. 3d 22, 37 (D.D.C. 2019). Similarly here, the combination of Taylor's somewhat longer suspension, accompanying

settlement agreement, and other allegations does not "amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788. The Court thus will grant the Department's motion to dismiss Taylor's hostile work environment claims.

### C.     Failure to Accommodate

Taylor's remaining claim alleges that the Department "recklessly failed to accommodate her disability" and did not engage in an "interactive process to determine a reasonable accommodation." Compl. ¶¶ 118–19. To establish a prima facie case for failure to accommodate claim under the Rehabilitation Act, Taylor must show: (1) that she had a disability within the meaning of the statute; (2) that the Department had notice of the disability; (3) that with reasonable accommodation she could perform the essential functions of the position; and (4) that the employer refused to make the requested accommodation. *Scarborough v. Natsios*, 190 F. Supp. 2d 5, 19 (D.D.C. 2002). An underlying assumption of any reasonable accommodation claim is that "the plaintiff-employee has requested an accommodation which the defendant-employer has denied." *Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999). Although the employee does not have to request the accommodation in writing, it must be "clear that the employee wants assistance for his or her disability." *Murphy v. District of Columbia*, 2022 WL 612710, at *4 (D.D.C. Mar. 2, 2022) (citation omitted).

Here, Taylor does not allege that she requested an accommodation. Although Taylor alleges that the Department knew of her disabilities, *see* Compl. ¶¶ 13, 17, 112, "[n]otice of a disability does not ordinarily satisfy the . . . request requirement, which performs the independent function of informing an employer of the . . . accommodation needed to remedy those limitations." *Waggel v. George Washington Univ.*, 957 F.3d 1364, 1372 (D.C. Cir. 2020). And although Taylor cites her "requesting sickness leaves informally" as evidence that she requested

10

an accommodation, *see* Pl.'s Opp'n to Def's Mot. to Dismiss at 24–25, Dkt. 17, "a request for a medical leave . . . alone [is] insufficient to make out a request for accommodation," *Waggel*, 957 F.3d at 1372 (citing *Flemmings*, 198 F.3d at 861–62).  The Court thus will dismiss Taylor's failure to accommodate claim.

## CONCLUSION

Accordingly, it is

**ORDERED** that the defendant's Partial Motion to Dismiss, Dkt. 14, is **GRANTED**.  It is further

**ORDERED** that the plaintiff's Suggestion of Death and Motion to Substitute Party, Dkt. 20, is **GRANTED**, for the reasons stated in that Motion.  Accordingly, the Clerk's Office shall change the caption of this case from "Annette R. Taylor" to "Estate of Annette Rebecca Taylor, and Kathleen Charlotte Smith, as Administrator of the Estate of Annette Rebecca Taylor."

**SO ORDERED.**

                                                                          _____
                                                                          DABNEY L. FRIEDRICH
                                                                          United States District Judge

March 31, 2022